## THE STATE OF KANSAS v. JOHN W. CLARK.

46   65<br>57  444

FALSE PRETENSES—*Evidence.* In a prosecution for obtaining money
under false pretenses, it is necessary for the state to prove the intent
to defraud, the false pretenses made with the intent, and the fraud
thereby accomplished must be shown, to warrant a conviction.

### *Appeal from Wyandotte District Court.*

PROSECUTION for obtaining money under false pretenses.
From a conviction at the March term, 1890, the defendant
*Clark* appeals. The opinion states the facts.

*Anderson & Littick, Ellis Lewis,* and *A. H. Case,* for appellant.

*John N. Ives,* attorney general, and *Winfield Freeman,*
county attorney, for The State.

Opinion by GREEN, C.: The defendant in this case was convicted in the district court of Wyandotte county of obtaining
money under false pretenses. It was charged in the information that he obtained the sum of $5,600 from the Stock-Yards
Bank, at Kansas City, Kansas, by falsely representing to the
agent of the bank that he was the owner of 143 head of native
Missouri four-year-old steers, and had good right to mortgage
the same. The evidence for the state disclosed the fact that
the defendant was indebted to the firm of Irwin, Allen & Co.,
of Kansas City, in the sum of $3,100, at the time the money
was charged to have been obtained. To procure the loan of
$5,600, the defendant gave a chattel mortgage upon the 143
head of steers, and some other stock, and also furnished, as
indorsers upon the note which he executed, Irwin, Allen & Co.
and W. H. Conklin. Out of the loan thus procured the defendant paid Irwin, Allen & Co. the amount due them, and
received from the bank three cashier's checks for the balance
of the $5,600. Some six weeks after the mortgage was given,
it was discovered that the defendant did not have all of the
cattle he had included in the mortgage, and the bank took

possession of the stock described in the mortgage which could be found and sold the same, realizing therefrom the sum of $3,969, leaving a balance of $1,831 upon the note given for the debt, and interest. The evidence upon the part of the state and the defense showed that the indorsers upon this note were good, and the balance could have been collected if suit had been instituted, but no effort was made before the filing of the information in this case to collect the amount due, except some conferences over the matter and personal requests to pay the balance due. It seems to have been conceded that Irwin, Allen & Co. and W. H. Conklin were financially responsible. Can it be said, under this state of facts, that an offense, under the statute, for obtaining money or property from the bank by false pretenses, has been made out?

To constitute the offense charged in the information, under § 94 of the crimes act, four elements must concur, which should be averred and proved: (1) There must be an intent to defraud; (2) there must be an actual fraud committed; (3) false pretenses must have been used for the purpose of perpetrating the fraud, and (4) the fraud must be accomplished by means of the false pretenses made use of for the purpose, viz.: They must be the cause, in whole or in part, which induced the owner to part with his property. (*The State v. Matthews,* 44 Kas. 596; same case, 25 Pac. Rep. 36; *Commonwealth v. Drew,* 19 Pick. 179; *The People v. Jordan,* 66 Cal. 10; 2 Bish. Crim. Proc., § 163; *The People v. Wakeley,* 62 Mich. 297.)

Tested by the above rules, which seem to be supported by reason and authority, it must appear that some one has been defrauded to insure a conviction. This one element is essential. Can it be said that the Stock-Yards Bank has actually been defrauded by the defendant, when it holds a note upon which there is a balance of less than $2,000 and the indorsers thereon are solvent, and no steps are taken to enforce the collection? The language of the court, in the case of *People v. Wakeley,* supra, is: "But it does not amount, in law, to a false pretense unless made with a fraudulent intent, and the

person parting with the property is actually defrauded." Was the Stock-Yards Bank actually defrauded? What right was it deprived of in the business transaction? It had parted with its money, but it held a note which was conceded to be good, aside from the security given by the defendant, and we fail to see in what way it was injured. If it was not defrauded, this essential ingredient of the crime charged was lacking, and, unless evidence can be produced to show that the bank was actually defrauded, the defendant should be discharged.

It is recommended that the judgment of the court below be reversed.

By the Court: It is so ordered.

All the Justices concurring.